# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                          :   CHAPTER 7
    THOMAS J. ELVERSON,                     :
        DEBTOR.                              :   BANKRUPTCY NO. 11-19455-MDC

## MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### I. INTRODUCTION

This involuntary proceeding arises from a dispute between the petitioning creditor, Catherine E. Moore (the "Petitioning Creditor" or "Moore") and her nephew, Thomas J. Elverson (the "Proposed Debtor" or "Elverson"), regarding loans allegedly made by Moore to Elverson over an almost twenty year time period. The Proposed Debtor requests that the Court dismiss the involuntary petition because (1) he is generally paying his debts as they become due, and (2) the alleged debts owed to Moore are subject to a bona fide dispute as to liability.

For the reasons discussed below, this Court finds that dismissal is warranted. Although the Proposed Debtor is generally not paying his debts as they become due and it is admitted that he has fewer than twelve creditors, the Petitioning Creditor's claim is subject to a bona fide dispute.

### II. BACKGROUND

On December 13, 2011 (the "Petition Date"), Moore filed the involuntary petition ("Petition") against Elverson, the son of her deceased sister. He is apparently Moore's only family member who lives in the Philadelphia area. She presently resides at 200 N. Wynnewood Avenue, Apt. 1051, Wynnewood, Pennsylvania. He presently resides at 506 Ogden Avenue, Swarthmore, Pennsylvania (the "Property").

It appears that for the last fifteen to twenty years, Moore has written checks to Elverson to assist him with the payment of his various living expenses. As a result of this custom, the Petitioning Creditor claims to have loaned to the Proposed Debtor a total of $850,000 (the "Claim"). Whereas, the Proposed Debtor testified that while he did regularly receive such payments from the Petitioning Creditor, he understood that these monies were gifts to him and that he was under no obligation to repay the Petitioning Creditor. The parties did little if anything to document these transactions.

On January 20, 2012, the Proposed Debtor filed his Involuntary Answer and Counterclaim ("Motion to Dismiss") wherein the Proposed Debtor requested this Court dismiss the Petition. In the Motion to Dismiss, the Proposed Debtor denied that he was generally not paying his debts as they became due and argued that Moore lacked standing to file the Petition because her claim is subject to a bona fide dispute. The Proposed Debtor alleged that Moore had no expectation of repayment of the various checks written to the Proposed Debtor because they were gifts to him made in recognition of the Moore's gratitude for the assistance provided to her by the Proposed Debtor. Alternatively, the Proposed Debtor alleged that Moore's claim was barred by the applicable statute of limitations, and the doctrines of laches and estoppel. Finally, the Motion to Dismiss requested this Court find that the Proposed Debtor was entitled to a judgment pursuant to §303(i) against Moore for his costs and attorney's fees plus punitive damages as sanction for Moore's alleged bad faith.

After the appearance of the parties before this Court, this Court entered an Order dated April 12, 2012, setting forth a schedule in anticipation of trial. The parties were ordered to complete discovery on or before May 11, 2012, to file any dispositive motions on or before May 25, 2012, and to appear at a trial scheduled for June 27, 2012 (the "Trial").

On June 25, 2012, counsel for the Proposed Debtor caused to be filed with this Court a letter raising for the first time his client's intent to contest the authenticity of certain documents that Moore intended to rely upon at the Trial. The Proposed Debtor apparently desired to obtain originals of the documents in order to have them reviewed by an expert in hand writing analysis. In this letter, the Proposed Debtor requested a continuance of the Trial that was set to be held two days later.

2

On June 26, 2012, the Proposed Debtor filed a formal motion requesting a continuance of the Trial scheduled for the following day. This motion restated the Proposed Debtor's intent to contest the authenticity of certain documents and the need to postpone the Trial to allow for their review by a handwriting expert. As stated by Moore's response to the Proposed Debtor's motion requesting a continuance, she did not consent to the continuance because of her belief that the Proposed Debtor's request was no more than a delay tactic. Moore correctly observed that this Court had scheduled a discovery period during which the Proposed Debtor had opportunity to address his concerns. Yet, for whatever reason, the Proposed Debtor waited until the eve of the Trial to raise these issues for the first time.

The next day, the parties appeared before this Court. This Court denied the Proposed Debtor's request for a continuance and proceeded with the Trial as scheduled. At the Trial, this Court heard the testimony of Moore and the Proposed Debtor. At the close of the Trial, this Court advised the parties that the evidence was sufficient to establish that the Proposed Debtor was generally not paying his debts as they became due. The parties then requested the opportunity to submit briefs addressing the issue of whether, based on the evidence provided to this Court, Moore's claim was subject to a bona fide dispute. This Court granted the request and permitted the filing of simultaneous briefs. Having received the parties' briefs and after considerable deliberation, this Court is now prepared to issue its decision.

**III.    DISCUSSION**

Section 303(b) of the Code provides that a single petitioning creditor may commence an involuntary bankruptcy case if (1) "there are fewer than 12 such holders;" 11 U.S.C. §303(b)(2); and (2) the petitioning creditor's claim is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount…" 11 U.S.C. §303(b)(1). The parties do not dispute that the Proposed Debtor has fewer than twelve creditors and this Court finds that the evidence produced at Trial was sufficient to establish that the Proposed Debtor was generally not paying his debts as they became due. Therefore, the only issue for this Court to address is whether the Petitioning Creditor has standing to file the Involuntary Petition. To have standing, the Petitioning Creditor must be the holder of a bona fide claim against the

Proposed Debtor. *Landon v. Hunt*, 977 F.2d 829, 832 (3d Cir. 1992) ("The Bankruptcy Code clearly states that an involuntary proceeding can *only* be filed by creditors who hold claims that are not contingent as to liability or subject to a bona fide dispute) (emphasis in original); *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66 (3d Cir. 1989) (recognizing that if a creditor's claim is subject to a bona fide dispute, that creditor lacks standing to file an involuntary petition); *In re Tama Manufacturing Co., Inc.*, 436 B.R. 763, 768 (Bankr. E.D. Pa. 2010) (same).

To be not subject to a bona fide dispute, a petitioning creditor's claim must be certain as to both liability and amount.  11 U.S.C. §303(b)(1); *In re Skyworks Ventures, Inc.*, 431 B.R. 573, 578 (Bankr. D.N.J. 2010) (finding that petitioning creditor lacked standing where "claim was disputed as to liability and amount"); *In re Euro–American Lodging Corp.*, 357 B.R. 700, 712 n. 8 (Bankr. S.D.N.Y. 2007) (stating that as a result of the 2005 amendments "any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a *bona fide* dispute."); *In re Mountain Dairies, Inc.*, 372 B.R. 623, 633 (Bankr. S.D.N.Y. 2007) (stating "That a claim could have been filed in good faith when a substantial portion of that claim was the subject of a dispute on its face is untenable").  Ultimately, a petitioning creditor's claim is the subject of a bona fide dispute if "there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Assoc, Inc.*, 865 F.2d at 65; *Tama Manufacturing Co.*, 436 B.R. at 768 (applying *Busy Beaver* standard).

The Petitioning Creditor bears the burden of providing *prima facie* evidence that her Claim is not subject to a bona fide dispute.  Once the Petitioning Creditor meets her *prima facie* burden, the Proposed Debtor bears the burden of establishing that a bona fide dispute does exist with regard to the Petitioning Creditor's Claim.  *Bartmann*, 853 F.2d at 1543–44 (discussing burden shifting standard with regard to a creditor's standing to file an involuntary petition); *In re Dilley*, 339 B.R. 1, 6 (B.A.P. 1st Cir. 2006) (discussing shifting burdens); *Mountain Dairies, Inc.*, 372 B.R. at 633 ("the petitioning creditor must first establish a *prima facie* case that no bona fide dispute exists"); *In re Mylotte, David & Fitzpatrick*, Bky. No. 07-11861, 2007 WL 2033812, at *6 (Bankr. E.D. Pa. Jul. 12, 2007) (same); *In re Graber*, 319 B.R.

4

374, 377 (Bankr. E.D. Pa. 2004) ("The initial burden lies with the petitioner to establish a *prima facie* case that there is no bona fide dispute.").

The Petitioning Creditor alleges that her Claim is derived from the Proposed Debtor's failure to repay a loan in the amount of $850,000. To provide *prima facie* evidence of her Claim, the Petitioning Creditor must provide evidence of the alleged loan. *In re VitaminSpice*, 472 B.R. 282, 291 (Bankr. E.D. Pa. 2012) (recognizing that loan documents introduced by petitioning creditors were sufficient to establish *prima facie* validity of claims); *In re Taub*, 439 B.R. 261, 274-75 (Bankr. E.D.N.Y. 2010) (finding that petitioning creditor lacked standing where she had presented no evidence of the underlying agreement supporting her claim); *In re Rimell*, 111 B.R. 250, 253 (Bankr. E.D. Mo. 1990) *aff'd by* 946 F.2d 1363 (8th Cir. 1991) (evaluating underlying agreements to determine whether claim was subject to a bona fide dispute). As stated by the Third Circuit, "[u]nder common law, to constitute a loan there must be (i) a contract, whereby (ii) one party transfers a defined quantity of money goods, or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date." *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 313 (3d Cir. 2002) (addressing what constitutes a loan under §523(a)(8)). Put another way, to establish the *prima facie* validity of her Claim, the Petitioning Creditor must establish the existence of one or more contracts obligating the Proposed Debtor to repay $850,000. Her Claim would consist of the obligations imposed on the Proposed Debtor by this contract.

To determine whether she has established her *prima facie* case that no bona fide dispute exists, this Court will address the evidence within the framework of traditional contract law. Axiomatically, a breach of contract claim, of which the Claim is a species, requires as a prerequisite the formation of an enforceable contract. Under Pennsylvania law,[1] to prove the existence of an enforceable contract, a party must provide evidence that demonstrates that the parties reached a mutual understanding, they exchanged consideration, and they understood the essential terms of their bargain. *Hart v. Arnold*, 884 A.2d 316,

---

[1] If an agreement exists between the parties regarding the repayment of $850,000, this Court finds that its enforcement would be governed by Pennsylvania law. The alleged agreement is between Pennsylvania residents and would have been negotiated, entered into, performed, and breached in Pennsylvania. *Benevento v. Life USA Holding, Inc.*, 61 F.Supp.2d 407 (E.D. Pa. 1999) (identifying factors Pennsylvania courts will consider in determining the law of which jurisdiction would apply to breach of contract action).

333 (Pa. Super. 2005) (stating that proof of an enforceable contract is necessary to prove a breach of claim); *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003) (discussing the elements necessary to prove the existence of an unenforceable contract); *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (stating what elements a party must pled to state a viable breach of contract claim); *Estate of Rodgers v. Morris Chapel Missionary Baptist Church*, No. 04-1577, 2005 WL 3602536 (Pa. Ct. Com. Pl. Dec. 14, 2005) (holding failure to establish terms of an oral loan agreement precluded the existence of a breach of contract claim). Here, the Petitioning Creditor's Claim is alleged to be based upon an agreement between the parties that allegedly obligates the Proposed Debtor to repay her a loan in the amount of $850,000. Despite her Claim being premised upon proof of an enforceable agreement between the parties, the Petitioning Creditor offers no discussion of how the evidence she submitted relates to the customary elements of contract law.[2]

    A.    **The Instant Memo as Evidence of a Loan Agreement Between the Parties**

As evidence of the contract that gives rise to her Claim, the Petitioning Creditor primarily relies on an Instant Memo dated July 6, 2011 (the "Instant Memo").[3] The Instant Memo is the only document that provides any explanation for the amount of her Claim. The Instant Memo states:

---

[2] While the Petitioning Creditor's memorandum does discuss what a bona fide dispute is generally, the memorandum is limited to self-serving conclusions that her claim is not subject to a bona fide dispute. It is devoid of any discussion addressing why the Claim is specifically not subject to a bona fide dispute. The Petitioning Creditor simply assumes the existence of a loan agreement without any discussion how the facts correspond to the elements of a cause of action for breach of contract.

[3] At the Trial, the Proposed Debtor invoked Fed. R. Evid. 1003 to object to the admission of the Instant Memo. The Proposed Debtor claimed that his alleged signature appearing on the Instant Memo is a forgery and that he was in New Hampshire on vacation with his fiancé from July 3 through July 12, 2012, when the Instant Memo is alleged to have been executed. However, he failed to provide any evidence other than his uncorroborated testimony to lend credence to his assertion. While the original document was not made available to this Court, this Court finds that the Proposed Debtor's decision to wait until the eve of the Trial to request an original copy of the document to constitute a waiver of any objection to the admission of the Instant Memo. As provided by the Federal Rules of Evidence, "[a] duplicate is admissible to the same extent as the original *unless a genuine question is raised about the original's authenticity*..." Fed. R. Evid. 1003. Due to the Proposed Debtor's delay in raising the issue of the authenticity of the Instant Memo and his failure to provide any evidence in support of his uncorroborated testimony, this Court found that no genuine question was raised as to the document's authenticity and permitted admission of the Instant Memo. *See, e.g., Sheet Metal Workers' Ass'n Local 19 v. J.S. Mechanical Contractors, Inc.*, 973 F.Supp. 516, 521-22 (E.D. Pa. 1997) (finding no genuine question as to document's authenticity when party failed to submit any evidence substantiating allegation that document was a forgery).

6

> I, Thomas John Elverson, have received today from Catherine Moore CK #1367 for $2,100.00 as a loan in addition to the $850,000.00 plus still owing her. ~~and said check is made to my mortgage company.~~

Trial Exh. P8 (strikethrough in original).

This Court finds that the Instant Memo alone is sufficient to establish that the parties shared a mutual expectation that the monies loaned to the Proposed Debtor would be repaid to the Petitioning Creditor. In the Instant Memo, the Proposed Debtor acknowledges that he owes $850,000 to the Petitioning Creditor. Despite this acknowledgement, this Court finds the Instant Memo to be insufficient to prove the existence of an enforceable contract because it makes no reference to the essential terms of whatever loan agreement that may exist between the parties. *Mackay v. Mackay*, 984 A.2d 529, 534 (Pa. Super. 2009) (recognizing that when a party seeks to enforce an oral agreement, the party must establish the essential terms and conditions of the alleged agreement); *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (stating that a party must establish the essential terms of a contract in order to state a claim for breach of contract); *Estate of Rodgers v. Morris Chapel Missionary Baptist Church*, No. 04-1577, 2005 WL 3602536 (Pa. Ct. Com. Pl. Dec. 14, 2005) (holding failure to establish terms of an oral loan agreement precluded the existence of a breach of contract claim). For example, the Instant Memo makes no reference to any terms governing whether the loan was subject to a rate of interest or even when the repayment of this obligation would mature. Absent these terms, this Court finds that the Instant Memo on its face is not sufficient to establish the existence of an enforceable contract. Because of the apparent omission of essential terms, a bona fide dispute exists with regard to whether the Instant Memo is in and of itself evidence of a contract between the parties.

Reference to parole evidence is of no assistance to cure the failure of the Instant Memo to establish the essential terms of whatever agreement governs repayment of Moore's claim. For example, it is clear to this Court that the Property played some role in the agreement. At the Trial, the Petitioning Creditor stated that pursuant to her agreement with the Proposed Debtor she was to be repaid from the sale of the Property or, alternatively, that the alleged loan agreement required the Proposed Debtor to transfer his interest in the Property to her. Audio recording of Trial 6/27/2012 @ 12:00pm (11:59:59-

7

12:00:05) Bky. No. 11-19455MDC (stating "Because I was going to be paid back…from the sale of his house"); Audio recording of Trial 6/27/2012 @ 1:33 pm (1:33:40-1:33:47) Bky. No. 11-19455MDC (stating "He was desperate for money and I would get the whole house.") (emphasis added).  From this testimony, this Court is left with several questions.  Was the sale of the Property supposed to trigger the Proposed Debtor's repayment obligations?  Was the Property intended to serve as some sort of security for the Proposed Debtor's repayment obligations?  Did the Proposed Debtor agree to sell her the Property in consideration of the alleged loan?  Was the alleged loan itself consideration for the sale of the Property?

Whatever the import of the Petitioning Creditor's statements regarding the role of the Property in the alleged agreement between the parties, it is clear that the Property played a significant role in whatever agreement that may or may not have existed between the parties.  From the Petitioning Creditor's testimony, it is clear that she believes whatever agreement she may or may not have with the Proposed Debtor conveys upon her some interest in the Property or is in some way conditioned upon the sale of the Property.  Failing to establish all of the essential terms of the alleged loan agreement, the Petitioning Creditor did not establish the existence of an enforceable agreement between the parties let alone that the existence of such an agreement is not subject to a bona fide dispute.

Complicating matters, the Petitioning Creditor's testimony regarding that her loans to the Proposed Debtor conferred upon her some interest in the Property creates a bona fide issue with regard to the application of the Pennsylvania Statute of Frauds, 33 P.S. §1.  Under the Pennsylvania Statute of Frauds, any transfer of an interest in real property is not enforceable unless evidenced in writing.  33 P.S. §1; *Bozzi v. Greater Delaware Valley Sav. and Loan Ass'n*, 389 A.2d 122, 124 (Pa. Super. 1978) ("The statute of frauds requires any agreement granting an interest in land to be in writing.").  This Court need not decide the scope of that interest or even whether such an interest was transferred.  This Court must only determine whether a meritorious contention as to the application of law exists as to the enforcement of the alleged loan agreement.  According to the testimony of the Petitioning Creditor, the alleged agreement may confer upon her an interest in the Property.  As a result, this Court must acknowledge that

8

application of the Statute of Frauds necessarily creates a bona fide dispute as to the enforceability of her Claim.

This Court notes that it is not finding that an enforceable agreement does not exist or that the Instant Memo may not serve as evidence of such an agreement. This Court is only recognizing that substantial issues relate to the use of the Instant Memo as the primary evidence of a contract underlying the Claim. Absent other evidence to resolve these uncertainties, these issues necessarily create bona fide disputes as to the Petitioning Creditor's alleged Claim.

### B.     The Promissory Note as Evidence of a Loan Agreement Between the Parties

In addition to the Instant Memo, the Petitioning Creditor also provided a copy of a Promissory Note dated December 22, 2002 (the "Promissory Note"), a document that purports to obligate the Proposed Debtor to pay $152,200 plus accrued interest to the Petitioning Creditor.[4] On its face, the Promissory Note appears to evidence some obligation of the Proposed Debtor to make payment to the Petitioning Creditor. However, it in no way provides evidence of the Petitioning Creditor's alleged $850,000 Claim. Moreover, this Court cannot find that the Promissory Note establishes that some portion of her Claim is not subject to a bona fide dispute. The Promissory Note provides that it is governed by New York law. As such, the New York statute of limitations appears to bar enforcement of some if not all of the obligations evidence by the Promissory Note. For both reasons, this Court finds that bona fide disputes exist with regard to the Petitioning Creditor's reliance upon the Promissory Note as evidence of her alleged Claim or some portion thereof.

The application of the New York statute of limitations creates a bona fide dispute as to the enforceability of the Promissory Note. The Promissory Note was executed on December 22, 2002. Under New York law, an action to recover on a promissory note must be commenced within six years. N.Y. C.P.L.R. §213; *Morrison v. Zaglool*, 931 N.Y. S.2d 82, 84 (N.Y. App. Div. 2011). With regard to a promissory note that is payable as of a specific date, New York law provides that the cause of action to enforcement such note accrues as of the specific date the note becomes payable. *Id.* With respect to a

---

[4] Trial Exhibit P-3.

note payable in installments, New York law provides that a separate cause of action accrues upon the nonpayment of each past due installment. *Id.*

The Promissory Note's first payment came due upon July 1, 2003, and its final payment was due on December 22, 2005. The terms of the Promissory Note state that the entire principal balance was to be paid on or before December 22, 2005. Therefore, the applicable statute of limitations would have barred the Petitioning Creditor from asserting any claim brought after December 22, 2011. However, she filed the Involuntary Petition on December 13, 2011. Because the state of limitations did not run prior to the filing of the Involuntary Petition, it appears that the Petitioning Creditor is not barred from pursuing a cause of action against the Proposed Debtor for nonpayment of the principal balance payment that was due on December 22, 2005.

However, the Promissory Note also provided for bi-annual payments of accrued interest beginning on July 1, 2003. Not only would the applicable six-year statute of limitations apply to bar any action relating to the collection of at least the first four installment payments, this Court recognizes that the Proposed Debtor's failure to make the installment payments may constitute an unequivocal repudiation of the Proposed Debtor's obligations under the Promissory Note. If the doctrine of unequivocal repudiation is applicable, the statute of limitations may have begun to run earlier than December 22, 2005. *Garcia .v Chase Manhattan Bank, N.A.*, 735 F.2d 645, 648 (2d Cir. 1984) (recognizing that an unequivocal repudiation would cause statute of limitations to run from date of repudiation); *Quiroga v. Fall River Music, Inc.*, Civ. No. 93-3914, 1999 WL 102754 (S.D.N.Y. Feb. 25, 1999) (holding that six-year statute of limitations ran from moment of unequivocal repudiation); *Hutton v. Smith*, 175 N.Y. 375 (N.Y. 1903) (same).

The Petitioning Creditor testified that she began making demands upon the Proposed Debtor to make payments immediately after the Promissory Note was alleged to be executed. Despite her demands, she admits that she never received any of the payments due pursuant to the terms of the Promissory Note and that she has taken no action prior to the filing of the Involuntary Petition to enforce its terms. Audio recording of Trial 6/27/2012 @ 1:10 pm (1:10:53-1:11:45) Bky. No. 11-19455MDC. Without making

any conclusions, this Court observes that the Proposed Debtor's conduct certainly had the color of an unequivocal repudiation. If so, the statute of limitations would have expired on July 1, 2009, six years from the date the first interest payment was due and prior to her taking any action to enforce the Promissory Note. While this Court is unprepared to find whether the facts are sufficient to establish that the Proposed Debtor unequivocally repudiated the Promissory Note, this Court is prepared to recognize that a bona fide issue exists with regard to whether the Proposed Debtor's failure to pay the interest payments in the face of the Petitioning Creditor's demands constitutes an unequivocal repudiation.

    C.        **Other Evidence of a Loan Agreement Between the Parties**

In addition to the Instant Memo and Promissory Note, the Petitioning Creditor provided copies of approximately 104 negotiated checks, two handwritten ledgers identifying some but not all of the alleged checks provided to the Proposed Debtor[5] and correspondence from the early 1990s relating to indebtedness that the parties do not dispute was paid off. This other evidence would be admissible to determine the terms of an oral agreement between the parties. *Lapio v. Robbins*, 729 A.2d 1229, 1232 (Pa. Super. 1999) ("In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealings between the parties in order to ascertain their intent."); *Boyle v. Steiman*, 631 A.2d 1025, 1033 (Pa. Super. 1993) ("To determine the terms of oral contracts, courts must look to the course of dealings between the parties."). The absence of a written agreement is in and of itself grounds for finding that the

---

[5] Despite claiming to have provided to the Proposed Debtor no fewer than 104 checks, the Petitioning Creditor has only provided copies of 24 negotiated checks from the period April 29, 2004 through March 26, 2006, evidencing a total amount of $94,650. She explains she has no record of checks prior to this period because it is her custom to destroy personal and business records after five years. For checks after this period, she explains that her bank no longer provides her with copies of negotiated checks and that her summaries were based upon her review of her bank statements from this period. For whatever reason, the Petitioning Creditor did not attempt to admit her bank statements and instead chose to rely upon her handwritten summary of these records. Of the copies of checks she did produce, only three bear any notation referencing that the check was intended to be repaid: a check in the amount of $500 dated April 29, 2004, with the notation "Loan of = am't"; a check in the amount of $400 dated August 28, 2004, with the notation "Loan – Temporary"; and (3) a check in the amount of $1,800 dated August 6, 2005, with the notation "Temp Loan." If these notations are to be relied upon to indicate that the specific checks were loans, this Court notes that both the New York and Pennsylvania statute of limitations would bar enforcement of any repayment obligation. Under New York law, the applicable statute of limitations is six years. N.Y. C.P.L.R. §213; *Morrison v. Zaglool*, 931 N.Y.S.2d 82, 84 (N.Y. App. Div. 2011). Whereas, under Pennsylvania law, the applicable statute of limitations is four years. 42 Pa. C.S.A. §5525; *see also In re Irwin*, Bky. No. 10-14407, 2010 WL 4976226, at *4 (Bankr. E.D. Pa. 2010).

11

Proposed Debtor's alleged liability is subject to substantial questions of fact. *In re Express Car & Truck Rental, Inc.*, 440 B.R. 422, 434 (Bankr. E.D. Pa. 2010) (observing that in the absence of a written agreement memorializing the terms of the alleged agreement "there is no doubt that a substantial question exists" regarding the bona fide status of the petitioning creditor). Ultimately, if there is an agreement between the parties evidencing the Claim, this Court finds that the evidence suggests that it was in fact an oral agreement and this other evidence is insufficient to remedy the uncertainties underlying the enforceability of her alleged Claim. These documents do not supply essential terms like the term or the relationship of the Property to whatever agreement underlies the enforcement of the Claim. In addition, it appears that the applicable statute of limitations would bar enforcement of a significant portion of the Petitioning Creditor's claim.

Like the Instant Memo, an oral agreement between the parties would be between Pennsylvania residents and appears to have been negotiated, entered into, performed, and breached in Pennsylvania. Under such circumstances, such an agreement would be governed by Pennsylvania law. *Benevento v. Life USA Holding, Inc.*, 61 F.Supp.2d 407 (E.D. Pa. 1999) (identifying factors Pennsylvania courts will consider in determining the law of which jurisdiction would apply to breach of contract action). Under Pennsylvania law, the applicable statute of limitations is four years and is set forth in 42 Pa. C.S.A. §5525:

> The following actions and proceedings must be commenced within four years: ...
> (3) An action upon an express contract not founded upon an instrument in writing.
> (4) An action upon a contract implied in law, except an action subject to another limitation specified in this subchapter...."

42 Pa. C.S.A. §5525; *see also In re Irwin*, Bky. No. 10-14407, 2010 WL 4976226, at *4 (Bankr. E.D. Pa. 2010).

With regard to oral agreements to repay a loan, the statute of limitations begins to run at the time the loan is made. *In re Irwin*, Bky. No. 10-14407, 2010 WL 4976226, at *4 (Bankr. E.D. Pa. 2010) ("With respect to an oral contract to repay a loan… the limitations period commences when the loan was made."); *In re Michael Angelo Corry Inn, Inc.*, 297 B.R. 435, 438 (Bankr. W.D. Pa. 2003) ("When an oral

contract to repay a loan is formed, the statute of limitations runs from the time the loan was made."); *In re Pagnotti*, 269 B.R. 326, 334-35 (Bankr. M.D. Pa. 2001) (finding that Pennsylvania statute of limitations would begin to run at the time each loan was issued). Because the Petitioning Creditor did not advance the amount of her Claim pursuant to a single transaction but instead apparently hundreds of smaller transactions, the statute of limitations runs from each instance she wrote a check to the Proposed Debtor. Assuming that each check written to the Petitioning Creditor was a loan,[6] she would be barred from enforcing the Proposed Debtor's alleged repayment obligation to the extent they relate to checks received on or before December 13, 2007.

The Bankruptcy Abuse Prevention and Consumer Act of 2005 ("BAPCPA") amended Bankruptcy Code Section 303(b) to clarify the definition of "bona fide dispute" to include disputes as to liability *or amount*. Therefore, a petitioning creditor lacks standing even if only a portion of her claim is subject to a bona fide dispute. *In re Taub*, 438 B.R. 761, 773-74 (Bankr. E.D.N.Y. 2010) (finding that petitioning creditor's failure to produce evidence sufficient to substantiate the amount of her claim required dismissal of involuntary petition); *In re Hentges*, 351 B.R. 758, 777 (Bankr. N.D. Okla. 2006). By operation of the statute of limitations, it appears that a significant portion of the Petitioning Creditor's

---

[6] This Court notes that this assumption is not justified by applicable law. In some jurisdictions, where a party takes a check and the check does not represent payment of an antecedent debt, the check will be presumed to constitute a loan. *See, e.g., Barnes v. Michalski*, 925 N.E.2d 323, 270 (Ill. App. 2010). However, the opposite rule applies under Pennsylvania law. As summarized by the Pennsylvania Supreme Court,

> The canceled checks offered in evidence did not raise any presumption of a loan, nor shift to appellee the burden of explaining the transaction in which they were given. The presumption which would arise from the checks, in the absence of evidence to the contrary, would be that they were given in payment of an antecedent obligation, or for cash… a check, of itself, is not evidence of a debt or loan of money, is well established by authority; the presumption is, it is given either in payment of a debt, or that cash was given for it at the time. *Under certain circumstances, a presumption of gift may arise from such evidence*.

*Goldberg v. Wine*, 192 A. 252, 253 (1937) (emphasis added); *see also Goslin v. Edwards*, 188 A. 851, 854 (Pa. 1937) ("The endorsement of a check absolute in form is sufficient to give rise to a presumption of a gift of the check."). Therefore, the checks are not in and of themselves evidence of a loan. It remained incumbent upon the Petitioning Creditor to provide independent evidence that any checks provided to the Proposed Debtor were in fact intended as loans.

13

Claim is uncollectable.[7] On the present record, this Court cannot determine what amount of the Petitioning Creditor's Claim is not barred by the statute of limitations. While the evidence does identify 41 payments in a total amount that appears to be $188,780 that were made by her to the Proposed Debtor after December 13, 2007, the evidence also does not identify the total universe of payments the Petitioning Creditor has relied upon to determine the value of her claim to be $850,000. Is $188,780 the total amount of her claim that is not time barred? Or did the Petitioning Creditor make other transfers after the December 13, 2007 cut off? The fact that this Court cannot determine the exact amount of the Claim that is not barred by the statute of limitations serves only to compound the uncertainty with regard to whether the Proposed Debtor accepted the Petitioning Creditor's checks as gifts or as loans. For this reason, this Court finds that it is necessarily true that her Claim is subject to a bona fide dispute. *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1068-69 (9th Cir. 2002) (upholding bankruptcy court decision finding that petitioning creditor's claim was subject to a bona fide dispute regarding when the statute of limitations began to run); *Landon v. Hunt*, 977 F.2d 829, 832 (3d Cir. 1992) (dismissing involuntary petition where petitioner's claim was barred by the statute of limitations).

Finally, this Court finds that the letters written by the Proposed Debtor regarding the indebtedness he apparently paid off sometime during the 1990s do not resolve whether later round of checks were intended as loans. While these letters do evidence that the parties had previously entered into loan agreements, this Court cannot say that they are conclusive as to the parties' intent regarding a later agreement.

---

[7] This Court is not prepared to state that the entirety of the Claim is time barred. While not evidence of an enforceable contract, this Court is willing to concede that the Instant Memo may constitute a clear, distinct and unequivocal acknowledgement of a debt as an existing obligation sufficient to toll the statute of limitations. *See, e.g., In re Pagnotti*, 269 B.R. 326, 335 (Bankr. M.D. Pa. 2001) (quoting *Huntingdon Finance v. Newtown Artesian*, 659 A.2d 1052 (Pa. Super. 1995)). If the Instant Memo did toll the statute, the Petitioning Creditor may be able to enforce the Proposed Debtor's alleged repayment obligations that accrued prior to December 13, 2007. However, that assumes that the Petitioning Creditor can prove the existence of an existing agreement to repay those amounts that is enforceable, something that she has yet to accomplish before this Court.

**CONCLUSION**

As stated above, this Petitioning Creditor has failed to introduce evidence sufficient to establish her *prima facie* case that no bona fide dispute exists. The evidence presented is insufficient to establish the essential terms of an agreement that is purported to obligate the Proposed Debtor to repay the amount of her Claim. Even assuming the Petitioning Creditor has produced sufficient evidence to establish the terms of the underlying agreement, this Court finds that issues relating to the Pennsylvania Statute of Frauds and the applicable statutes of limitations are sufficient to demonstrate that a bona fide dispute does exists as to both liability and amount. Substantial issues of law and fact must be resolved in order to determine the legitimacy of the Petitioning Creditor's Claim. The proper venue for resolution of these issues is a court of general jurisdiction. The Petitioning Creditor is therefore without standing to file the Involuntary Petition and it therefore must be dismissed.

An Order consistent with this Memorandum will be entered.

Dated: May 15, 2013

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE